IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RICHARD W. HOYLE, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 05-0063-S-EJL |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| ADA COUNTY DISTRICT COURT, | ) | |
| STATE OF IDAHO, and LAWRENCE | ) | |
| WASDEN, Attorney General, State of | ) | |
| Idaho, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Before the Court in this habeas corpus matter is Respondents' Motion for Dismissal
on the Merits.  After a careful review of the briefing and the record, the Court has determined
that this matter will be submitted without oral argument.  D. Idaho L. Civ. R. 7.1(d).

For the reasons set forth more fully herein, the Court concludes that Respondents'
Motion will be granted and the Petition for Writ of Habeas Corpus, seeking relief under the
Double Jeopardy Clause of the Fifth Amendment, will be denied.

## I.

## BACKGROUND

In Ada County Case No. 97-00620 ("Case 620"), the State of Idaho charged Petitioner
with several felony counts in relation to the management of his insurance business, Hoyle
& Associates Insurance Agency, including one count of racketeering (Count B) predicated

upon several alleged criminal acts of grand theft, forgery, and insurance fraud.  By the time

the case went to the jury, three counts remained, one of which was the racketeering count.

Near midnight on the third day of deliberations, the jury sent the following note to the trial

court:

> We have reached a unanimous verdict on Counts A and E.  As to Count B, we
> cannot reach a unanimous agreement on a number of predicate acts.  Do you
> want us to note on the verdict form those predicate acts to which we cannot
> agree?  We have made extensive effort to obtain an agreement and don't feel
> we can.  Please let us know how you would like us to proceed.

*State's Lodging A-6*, p. 4.

After a discussion between the parties and the trial court regarding the note,

Petitioner's counsel moved for a mistrial on Count B, claiming that "Count B at this point

is not fully decided."  *State's Lodging A-6*, p. 3.  The trial court indicated that it would take

the matter under advisement.

The court read the note back to the jury and questioned the jurors whether continued

deliberation would serve any purpose, to which they responded negatively.  With the consent

of the parties, the court then directed the jury to return to the jury room and fill out the

verdict form, indicating its "answers to charges, to questions, and to predicate acts on which

you have unanimously agreed . . . On any questions or predicate acts on which you do not

unanimously agree, please ask the moderator simply to write down next to that "NA" for no

agreement."  *State's Lodging A-6*, p. 5.

The jury returned with a verdict of not guilty on Counts A and E.  The verdict form

**Memorandum Decision and Order - 2**

with respect to the racketeering charge, Count B, was divided into several questions.  The jury responded to the first question, "did the defendant commit at least two incident [sic] of racketeering conduct," by checking "no," but wrote immediately below, "except as to the seven predicate acts upon which we could not reach unanimous agreement." *State's Lodging A-11*, p. 847.  For twenty-three of the thirty remaining predicate acts listed on the form, the jury checked "not guilty," but for seven other acts, the presiding juror wrote "No Agmt" to the side.  *State's Lodging A-11*, p. 847-51.  Finally, when asked whether the State had proven beyond a reasonable doubt whether Petitioner had committed racketeering under an "investment" theory or a "participation" theory, the jury checked "not guilty" for both, but again wrote immediately below, "except for the seven predicate acts upon which we could not reach unanimous agreement."  *State's Lodging A-11*, p. 851.

The trial court read the verdict form in open court and asked the jury, "is that your verdict on which matters you have agreed [and] is that also your decision on the matters to which you have not agreed?"  *State's Lodging A-6*, pp. 8-9.  The jury affirmed.  When polled individually, all jurors also affirmed.  The trial court entered a judgment of acquittal on Counts A and E, and dismissed the twenty-three predicate acts upon which the jury found Petitioner not guilty.

Petitioner thereafter filed Motion for Judgment of Acquittal on Count B, arguing, for the first time, that the jury had returned a not guilty verdict on the racketeering charge, and that any retrial on that charge would violate the constitutional prohibition against double

**Memorandum Decision and Order - 3**

jeopardy. After hearing argument, the trial court denied the Motion, concluding that the jury had not reached a unanimous decision on Count B based upon the remaining seven predicate acts. The court declared a mistrial as to Count B, and the matter was set for a new trial.

On the day that the second racketeering trial was set to begin, the State announced that it intended to proceed on a new indictment in Case No. 0000795 ("Case 795"). In that case, Petitioner was charged with two counts of grand theft and three counts of insurance fraud, which were among the unresolved predicate acts in the racketeering prosecution. The trial court dismissed Case 620 without prejudice to the State's right to proceed on the new charges in Case 795.

Petitioner appealed, claiming, in relevant part, that any new prosecution was prohibited under double jeopardy principles. Both the Idaho Court of Appeals and the Idaho Supreme Court rejected that argument and affirmed the trial court's decision to order a mistrial on Count B based upon the jury's failure to agree. *State v. Hoyle*, 2003 WL 721617 (Idaho Ct. App. 2003); *State v. Hoyle*, 99 P.3d 1069 (Idaho 2004).

Petitioner has now filed a Petition for Writ of Habeas Corpus in this Court, in which he again contends that a second trial is prohibited by the Double Jeopardy Clause of the Fifth Amendment. Petitioner has been released on his own recognizance pending trial in Case 795, and it appears that a trial date has not been set.

Respondents have submitted a Motion for Dismissal on the Merits, and United States Magistrate Judge Mikel H. Williams has reassigned the case to this Court for resolution. The

**Memorandum Decision and Order - 4**

matter is fully briefed and ready for disposition.

## II.

## STANDARDS OF LAW

A.   <u>Habeas Standards</u>

Although Petitioner Hoyle has been released on his own recognizance pending trial, he is "in custody" for purposes of habeas review.  *Justices of the Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 301-02 (1984).  Because Petitioner's custody does not arise as a result of a state court judgment of conviction, the jurisdictional basis for this case is the general habeas statute, 28 U.S.C. § 2241(c)(3), rather than 28 U.S.C. § 2254.  *Stow v. Murashige*, 389 F.3d 880, 885 (9th Cir. 2004).   A pretrial claim of double jeopardy, moreover, presents an exception to the general rule that a federal court must abstain from interfering in ongoing state criminal proceedings.  *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

Therefore, after deferring to any state court findings of fact and interpretations of state law, this Court must independently determine whether Petitioner has shown that he is being held in violation of the United States Constitution.  *Stow,* 389 F.3d at 885-86.

B.   <u>Double Jeopardy Standards</u>

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the States by the Fourteenth, provides that no person shall "subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. AMEND. V.  As relevant here, the Clause protects

a criminal defendant against a second prosecution for the same offense after an acquittal. *See, e.g., Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984) (citation omitted).

An acquittal for double jeopardy purposes is defined as "a resolution, correct or not, of some or all of the factual elements charged." *Smith v. Massachusetts*, 543 U.S. 462, ___, 125 S.Ct. 1129, 1134 (2005) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)).  An acquittal will prevent a second prosecution even if it is based upon an egregious error of fact or law.  *Fong Foo v. United States*, 369 U.S. 141, 143 (1962); *Sanabria v. United States*, 437 U.S. 54, 64 (1978).  Additionally, an acquittal on a greater offense generally bars a second prosecution for any lesser included offenses.  *See Brown v. Ohio*, 432 U.S. 161, 167-68 (1977) (*citing Blockberger v. United States*, 284 U.S. 299 (1932)).

If a trial court, however, has declared a mistrial based upon the jury's inability to come to a unanimous agreement, the Double Jeopardy Clause will not prohibit a new trial, provided that a reviewing court has not otherwise entered the equivalent of a judgment of acquittal.  *Richardson v. United States*, 468 U.S. 317, 324, 326 (1984); *Burks v. United States*, 437 U.S. 1, 11-12 (1978).

With these principles in mind, the Court turns to the claims in this case.

**Memorandum Decision and Order - 6**

# III.

# DISCUSSION

Petitioner makes two primary arguments in support of his claim that the Double Jeopardy Clause prohibits retrial.  First, he contends that the jury, either mistakenly or intentionally, returned a written not guilty verdict on the racketeering charge and, consequently, he was acquitted of that charge.  Petitioner asserts that this alleged acquittal prevents the State from retrying him in Case 795 for substantive offenses that the state courts have determined were lesser included offenses of the original racketeering charge.  Second, Petitioner contends that regardless whether he was acquitted at the first trial, the evidence was legally insufficient to convict him during that proceeding, and he therefore cannot be retried in Case 795.[1]  *See Petition for Writ of Habeas Corpus*, pp. 6-29; *Petitioner's Brief on the Merits*, p. 2.

A.    The Jury Failed to Reach a Unanimous Decision on Count B

Petitioner relies heavily upon his contention that because the jury checked "not guilty" on the verdict form, he was acquitted of racketeering, and he faults the state courts for

---

[1]  To the extent that Petitioner also contends that he cannot be retried for the greater offense of *racketeering*, which the State has dismissed and has not included in Case 795, the Court agrees with Respondents that such a claim would not be ripe until Petitioner has been recharged with racketeering, or it is clear that the State intends to prosecute him for that crime. *See United States v. Corona*, 34 F.3d 876, 882 n.5 (9th Cir. 1992) (double jeopardy claim becomes ripe once a second prosecution is initiated).  Until then, any claim in this respect "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citations omitted).

**Memorandum Decision and Order - 7**

"look[ing] behind the verdict form" to conclude that the jury was deadlocked on Count B and that a mistrial was proper.  *Petitioner's Brief on the Merits*, pp. 6-8.

Petitioner's argument assumes too much, as the verdict form does not reflect an unqualified verdict on Count B.  Rather, after the jury checked not guilty with respect to whether Petitioner committed racketeering under the investment or participation theories, it immediately noted, "except as to the seven predicate acts upon which we could not reach unanimous agreement."  *State's Lodging A-11*, p. 851.  This is also true of the jury's answer to the question whether Petitioner committed two or more "incidents of racketeering conduct."  *State's Lodging A-11*, p. 847.  These notations are not mere surplusage that can be ignored, as Petitioner suggests, but instead qualify and explain the jury's findings, or lack thereof, on the racketeering charge.  *Cf. United States v. Ailsworth*, 138 F.3d 843, 846 (10th Cir. 1998) (verdict must be certain, unqualified, and unambiguous); *see also Cook v. United States*, 379 F.2d 966, 970 (5th Cir. 1967).

Nor has Petitioner persuaded the Court that the verdict from must be viewed in isolation from the existing record when the record can provide a context for determining the jury's intent and giving effect to that intent.  *See United States v. Nooks*, 446 F.2d 1283, 1290 (5th Cir. 1971) (court may look to the pleadings, the jury charge, and the entire record); 23A C.J.S. *Criminal Law* § 1410 (1989) (court may construe uncertain verdict by reference to the record).  This is not a matter of impeaching or second guessing a clear written verdict, but instead involves a review of contemporaneous events to discern whether the jury agreed

**Memorandum Decision and Order - 8**

unanimously on a verdict in the first instance.  Such a review in this case supports the state courts' conclusion that Petitioner was not acquitted.

The jury deliberated for three days.  Near midnight of the final day, it informed the trial court that "[w]e have reached a unanimous verdict on Counts A and E.  As to Count B, we cannot reach a unanimous agreement on a number of predicate acts."  *State's Lodging A-6*, p. 4.  Petitioner's trial counsel interpreted the jury's note as indicating a lack of agreement on Count B, and he requested a mistrial on the racketeering charge.  This interpretation was reasonable; given that the jury had deliberated for several hours over the course of three days and had indicated that it had reached a unanimous verdict on Counts A and E, the obvious implication is that the jury could not reach a unanimous verdict on Count B because it was hung on certain predicate acts.  Further, the jury noted that "[w]e have made extensive effort to obtain an agreement and don't feel we can," and, in open court, indicated that further deliberation would be useless.  With Petitioner's acquiescence, the trial court then directed the jury to note on the verdict form those matters on which it agreed and those matters on which it did not agree.

In accordance with the trial court's direction, the jury completed the form.  It returned a not guilty verdict on Counts A and E.  *State's Lodging A-11*, p. 847.  Regarding Count B, the jury initially noted that the State had not proven two or more incidents of racketeering conduct, "except as to the seven predicate acts upon which we could not reach unanimous agreement."  *State's Lodging A-11*, p. 847.  Because the jury answered this question

negatively, the verdict form *required* it to mark "not guilty" in response to whether Petitioner had committed racketeering under the investment or participation theory.  *State's Lodging A-11*, p. 851 ("If your answer to either Question 1A or 1C is 'NO' then you must answer both parts of 1D 'NOT GUILTY'.")  The jury followed this direction, but again immediately qualified its markings with, "except as to the seven predicate acts upon which we could not reach unanimous agreement."  *Id*.  The jurors affirmed that the verdict form reflected their "verdict on which matters [they] have agreed" and their "decision" on the matters to which they could not agree.  *State's Lodging A-6*, pp. 8-9.  They did not specifically affirm a verdict of not guilty on Count B, and the trial court did not enter a judgment based upon a not guilty verdict on that count.

It is therefore clear from the record that the jury did not reach a consensus on the ultimate question of guilt on Count B.  While the jurors agreed that twenty-three predicate acts had not been proven, they could not agree on the remaining seven predicate acts.  Because the jurors could not agree whether Petitioner had committed these seven acts, it follows that they also did not resolve whether Petitioner committed "at least two incidents of racketeering conduct" (that is, predicate acts), or, if so, whether those incidents amounted to a "pattern of racketeering activity."  *See State's Lodging A-12 (Jury Instruction Nos. 15,*

**Memorandum Decision and Order - 10**

*16, and Substituted No. 16).*[2]  This conclusion is consistent with the entire record, including the markings on the verdict form itself.  Thus, the jury did not return a verdict on Count B.

It is for this reason that *Stow v. Murashige*, 389 F.3d 880 (9th Cir. 2004), upon which Petitioner relies, is inapposite.  There was no question in *Stow* whether the jury had agreed on a not guilty verdict, the only issue was whether the verdict would prohibit a second prosecution because it had apparently been based upon an error of law.  The Ninth Circuit held that the second prosecution was barred, and it chided the state court for attempting to determine whether the verdict amounted to an acquittal in "substance" or only in "form."  *Id*. at 889-89, 891.  In reaching that conclusion, the Ninth Circuit noted that "all that is left of the jury's intent is the "Not Guilty" verdict."  *Id*. at 888.

The foundational matter that was assumed in *Stow*–that the jury had returned a unanimous verdict–is precisely the question in this case.  The issue here is not whether a jury's verdict amounted to an acquittal in "substance" or "form," or whether a court is permitted to second guess an acquittal to determine if it is correct, but whether the jury actually came to a unanimous decision.  *Stow,* and the other cases that Petitioner cites, do not speak directly to this issue.

Because Petitioner was not acquitted of racketeering, the Double Jeopardy Clause will not prohibit a second trial in Case 795 on that basis.

---

[2]  Respondents' objection to expanding the record to include the jury instructions is overruled.  The instructions are relevant to the issues before the Court.

**Memorandum Decision and Order - 11**

B.    Petitioner's Claim of Insufficient Evidence is Not Cognizable

Petitioner next argues that regardless whether the jury reached a verdict on Count B, he is entitled to habeas relief because the State failed to present sufficient evidence to prove the racketeering charge beyond a reasonable doubt at the first trial and, more specifically, to prove the five predicate acts that are now charged as separate offenses in Case 795.  It is unclear whether Petitioner relies solely upon the Double Jeopardy Clause, or whether Petitioner is attempting to raise an independent claim of insufficient evidence under the Due Process Clause of the Fourteenth Amendment.  Neither basis will support a claim for relief.

In *Richardson v. United States*, 468 U.S. 317, 324, 326 (1984), the United States Supreme Court held that when a mistrial has been declared because of a hung jury, the Double Jeopardy Clause will not bar a new trial regardless whether the evidence was legally sufficient to support a conviction at the first trial, unless a reviewing court has entered the equivalent of a judgment of acquittal.  *Id*.  This is because the original jeopardy has not been terminated by a constitutionally significant event.  *Id*. at 326.

Petitioner attempts to distinguish *Richardson* on procedural grounds, but the rule of law is directly on point.  In present case, the jury did not return a verdict on racketeering, and no reviewing court has entered the equivalent of a judgment of acquittal.  Accordingly, jeopardy has not yet terminated, and Petitioner does not have a valid double jeopardy claim based upon insufficient evidence at the first trial.

**Memorandum Decision and Order - 12**

The Fourteenth Amendment will not provide an independent basis for relief.  It is true that in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that a defendant's right to due process of law is violated when he or she has been *convicted* based upon evidence that would be insufficient to convince any rational finder of fact of the defendant's guilt beyond a reasonable doubt.  Petitioner, though, does not stand convicted of any crime, and he has cited no authority for the proposition that the Due Process Clause is offended by the State's alleged failure to present sufficient evidence at a trial that ended in a hung jury. *See, e.g., United States v. Brack*, 747 F.2d 1142, 1148 (7th Cir. 1985) ("the protection of the Due Process Clause focuses on conviction, not retrial").

The Court is also not persuaded that it is required to address a sufficiency of the evidence claim because the Idaho Supreme Court reviewed the evidence at the original trial. Petitioner's case was before the state appellate courts, in part, on appeal from the denial of a motion for judgment of acquittal.  A state appellate court's decision to review the denial of a motion for judgment of acquittal after a mistrial has been declared is governed by the state's rules of criminal and appellate procedure.  As a result, this issue is solely a matter of state law that cannot be reviewed in a federal habeas proceeding.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner's contention that he has a "right to address the merits of the state court's decision" is only true to the extent that a constitutional claim is properly before this Court. *Petitioner's Brief on the Merits*, p. 10.  Because Petitioner has neither been acquitted nor

**Memorandum Decision and Order - 13**

convicted in state court, he does not have a cognizable federal claim based upon a perceived lack of sufficient evidence at his original racketeering trial.

For all of these reasons, the Petition for Writ of Habeas Corpus shall be denied.

## IV.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondents' Motion for Dismissal on the Merits (Docket No. 12) is GRANTED.

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus is DENIED.

DATED:  **February 10, 2006**

Honorable Edward J. Lodge
U. S. District Judge

**Memorandum Decision and Order - 14**